## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ANNMARIE RINALDI,

      Plaintiff,

      v.

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

      Defendant.

CIVIL ACTION NO. 3:21-cv-00714

(SAPORITO, M.J.)

## MEMORANDUM

In this matter, the plaintiff, Annmarie Rinaldi, seeks judicial review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits, pursuant to 42 U.S.C. § 405(g). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

## I.   BACKGROUND

On June 29, 2016, Rinaldi protectively filed a claim for Title II Disability Insurance Benefits, asserting a disability onset date of June 11, 2016. (Tr. 218.) The claim was initially denied by state agency reviewers on December 16, 2016. The plaintiff then requested an

administrative hearing.

A hearing was subsequently held on June 13, 2018, before administrative law judge Richard Zack. ALJ Zack received testimony from the plaintiff and an impartial vocational expert, Nadine Henzes.

On June 25, 2018, ALJ Zack denied Rinaldi's application for benefits in a written decision. (Admin. Tr. 319-20.) The plaintiff sought further administrative review of her claims by the Appeals Council, and the Appeals Council vacated the decision and remanded the case to administrative law judge Frank Barletta (the "ALJ") with direction to further consider the RFC and the claimant's mental limitations, provide specific references to support the RFC determination, and obtain additional medical and vocational evidence, including specific jobs which the plaintiff is capable of performing. (Tr. 218.)

A new hearing was held on March 25, 2020, before ALJ Barletta. The ALJ received testimony from the plaintiff and an impartial vocational expert, Eric David Dennison. (Tr. 219.)

On August 20, 2020, the ALJ denied Rinaldi's application for benefits in a written decision. (Admin. Tr. 218-35.) The ALJ followed the familiar five-step sequential evaluation process in determining that

Rinaldi was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). First, the ALJ found that Rinaldi met the insured status requirements through June 30, 2022. At step one, the ALJ found that Rinaldi had not engaged in substantial gainful activity since June 11, 2016, the alleged onset date. At step two, the ALJ found that Rinaldi had the severe impairments of: bipolar disorder with severe depressive features, major depressive disorder with anxious distress and possible psychotic features, anxiety, borderline personality disorder, and post-traumatic stress disorder (PTSD). The ALJ found that Rinaldi had the following non-severe impairments:  iron deficiency anemia, interstitial cystitis with urinary stress and urge incontinence/overactive bladder, rib fracture, restless legs syndrome, and tardive dyskinesia. At step three, the ALJ found that Rinaldi did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Between steps three and four of the sequential evaluation process, the ALJ assessed Rinaldi's residual functional capacity ("RFC"). *See*

*generally id.* at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Rinaldi had the RFC to perform "a full range of work at all exertional levels" with the following limitations:

> [T]he claimant is limited to unskilled work, involving only routine, repetitive tasks that are not performed in a fast-paced production environment. She is limited to occupations with only occasional, simple decision-making and occasional changes in work duties or work setting. She can tolerate only occasional interaction with supervisors and co-workers, and no more than brief and incidental interaction with the public.

(Tr. 225-26.)

In making these factual findings regarding Rinaldi's RFC, the ALJ considered her symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. §§ 404.1529; Soc. Sec. Ruling 16-3p, 2017 WL 5180304. The ALJ also considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. §§ 404.1520c.

At step four, the ALJ found that the plaintiff is unable to perform any of her past relevant work as a case worker (DOT# 195.107-010), a mental retardation aide (DOT# 355.377-018), and Teacher, Learning

Disabled (DOT# 094.227-030). (Tr. 233.)

At step five, based on the RFC and on testimony by the vocational expert, the ALJ concluded that Rinaldi was capable of performing work as a Linen Room Attendant, DOT# 222.387-030,[1] which is a medium exertion, unskilled position, with an SVP of 2, with approximately 54,000 jobs in the national economy, a Garment Sorter, DOT# 222.687-014,[2] which is a light exertion, unskilled position, with an SVP of 2, with approximately 23,000 jobs in the national economy, and a Classifier, Laundry Sorter, DOT# 361.687-014,[3] which is a light exertion, unskilled position with an SVP of 2, with approximately 28,000 jobs in the national economy. The ALJ explained that, "The vocational expert testified that these jobs would require no interaction with the general public in the typical, behind-the-scenes situations, and interaction with coworkers and supervisors would be occasional." (Tr. 234.) Based on this finding, the ALJ concluded that Rinaldi was not disabled for Social Security purposes.

The plaintiff sought further administrative review of her claims by

---

[1] *See* DICOT 222.387-030, 1991 WL 672098 ("linen-room attendant").

[2] *See* DICOT 222.687-014, 1991 WL 672131 ("garment sorter").

[3] *See* DICOT 361.687-014, 1991 WL 672991 ("classifier").

the Appeals Council, but her request was denied on February 18, 2021, making the ALJ's August 2020 decision the final decision of the Commissioner subject to judicial review by this court. (Tr. 1.)

Rinaldi timely filed her complaint in this court on April 16, 2021. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II. DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g) (sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Rinaldi asserts on appeal that the ALJ's RFC determination is not supported by substantial evidence because (1) the ALJ erred in his evaluation of medical opinions, especially the assessments of the treating

psychiatrist and consultative examiner, and (2) the ALJ erred in his evaluation of Rinaldi's subjective statements. (Doc. 19, at 15, 29). Rinaldi asserts that, if the ALJ had credited the treating and consultative opinions, she would have been found disabled.

## A. Evaluation of Medical Opinions

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of the medical opinions. As a preface, we note that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).

However, the ALJ must "provide 'good reasons' in his decision for the weight he gives to a treating source's opinion." *Ray v. Colvin*, No.

1:13-CV-0073, 2014 WL 1371585, at *18 (M.D. Pa. Apr. 8, 2014) (quoting 20 C.F.R. § 404.1527(c)(2)).  "A decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id*. (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting in turn Soc. Sec. Rul. 96–2p, 1996 WL 374188, *5 (1996)).

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1) (applicable to claims filed before Mar. 27, 2017).  "In evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009).  But for claims, like Rinaldi's, filed before March 27, 2017, "[a] cardinal principle guiding disability eligibility determinations is that the ALJ

accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).  The applicable regulations provide that if "a treating source's medical opinion on the issue(s) of nature and severity of [a claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the Commissioner "will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Under the Social Security regulations in effect at the time of the ALJ's decision in this case, a "treating source" was a "physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502. "If not well-supported by medically acceptable clinical and diagnostic techniques or inconsistent with other substantial evidence in the case record, a treating source medical opinion is nevertheless entitled to

deference." *Mullins v. Berryhill*, No. 3:17-CV-01042, 2018 WL 5649926, at *8 (M.D. Pa. Sept. 14, 2018), *report and recommendation adopted*, No. 3:17CV1042, 2018 WL 5631378 (M.D. Pa. Oct. 31, 2018) (citing Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *4).

Under the relevant regulations, when the Commissioner does not give a treating source's medical opinion controlling weight, it analyzes the opinion in accordance with a number of factors including, the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the opinion, the "[c]onsistency" of the opinion with the record as whole, the "[s]pecialization" of the treating source, and any other relevant factors. 20 C.F.R. §§ 404.1527(c)(2)–(c)(6), 416.927(c)(2)–(c)(6).

"In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d

Cir. 1999)).   The ALJ also may not disregard a treating physician's "medical opinion based solely on his own 'amorphous impressions, gleaned from the record and from his evaluation of [the claimant]'s credibility.'" *Id.* at 318 (quoting *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983)).   "[L]ay reinterpretation of medical evidence is not 'inconsistent ... substantial evidence' sufficient to reject an uncontradicted treating source medical opinion." *Mullins*, 2018 WL 5649926, at *8, *report and recommendation adopted*, 2018 WL 5631378 (quoting *Tilton v. Colvin*, 184 F. Supp. 3d 135, 141 (M.D. Pa. 2016).

## B. The ALJ's Analysis of the Medical Opinions

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of the medical opinions. Specifically, the plaintiff states that the "ALJ failed to find Plaintiff had any limitations making judgments on simple work-related decisions or responding appropriately to work situations and routine work settings" (Doc. 19, at 17) despite Dr. Levinson's opinion that the plaintiff has moderate limitations in these areas. However, the ALJ did provide for limitations in these areas in the RFC determination. The RFC determination states that the plaintiff "is limited to occupations

with only occasional, simple decision-making and occasional changes in work duties or work setting." (Tr. 225.) In the Social Security Disability Insurance Benefits context, *occasional* means "occurring from very little up to one-third of the time, . . . generally total[ing] no more than about 2 hours of an 8-hour workday." SSR 96-9P (S.S.A.), 1996 WL 374185. By limiting the plaintiff's amount of simple decision-making and change in work routine and setting, the ALJ has provided for the plaintiff's moderate limitations in these areas.

The plaintiff also argues that the ALJ improperly relied upon the plaintiff's engagement in some activities of daily living and upon the ALJ's analysis of the treatment notes to reject the treating physician's opinion. (Doc. 19, at 18-20.) "While contradictory medical evidence is required for an ALJ to reject a treating physician's opinion outright, such an opinion may be afforded 'more or less weight depending upon the extent to which supporting explanations are provided.'" *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999)). Here, the treating physician provided almost no supporting explanations, stating only "mental health" and "Mood instability results in hospitalizations at mental health visits.

She also had psychotic features in the past" as explanations. (Tr. 708.) Therefore, as long as the ALJ did not reject the opinion outright, the ALJ was entitled to assign Dr. Levinson's opinion less weight due to the lack of explanation in the opinion. The ALJ did not reject Dr. Levinson's opinion. In his decision, the ALJ provided the following analysis of Dr. Levinson's medical opinion:

> The undersigned gives [Dr. Levinson's] opinion partial weight. The mild limitations for simple instructions and simple decision making and moderate limitations for complex instructions and decision making are given more weight because they are consistent with and supported by the evidence of record, including the mental status examination findings, the claimant's noted improvement in her mood with medication, and the claimant's statements regarding the activities in which she has engaged during the relevant time period, as discussed above in greater detail. However, the marked limitations as opined are given little weight as they are not consistent with or supported by the previously discussed evidence of record, including the treatment records from the claimant's mental health providers during the relevant time period that are indicative that the claimant improved over time with medication, with only a few notations of increased anxiety or depression, also noting that aside from variations in mood and affect, the claimant's remaining mental status examination findings were within normal limits. These examinations noted the claimant had normal thought content and processes, fair to good insight and judgment, no cognitive deficits, normal speech, normal motor behavior, intact recent and remote memory, at most a mildly impaired memory only during the consultative examination, and a cooperative and pleasant demeanor with an appropriate appearance. Furthermore, the claimant indicated in her

Function Report and during her consultative examination that the claimant had engaged during the relevant time period in a wide variety of activities of daily living, as discussed above in greater detail. As such, this opinion is given partial weight.

(Tr. 231-32.)

Dr. Levinson opined that the plaintiff has *mild limitations* in the plaintiff's ability to understand, remember, and carry out simple instructions; *moderate limitations* in the plaintiff's ability to understand, remember, and carry out complex instructions, to make judgments on simple and complex work-related decisions, and to respond appropriately to usual work situations and changes in a routine work setting; and *marked limitations* in the plaintiff's ability to interact appropriately with coworkers, supervisors, and the public. Dr. Levinson failed to provide any explanation beyond "mental health."

Although the ALJ assigned limited weight to Dr. Levinson's opinion, the ALJ actually accommodated *all* of the limitations opined by Dr. Levinson about which the plaintiff has alleged error.[4] Dr. Levinson

---

[4] Although the ALJ did not address the effect of potential absences due to the plaintiff's hospitalizations mentioned by Dr. Levinson, the plaintiff has not raised this issue on appeal. It is therefore waived. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1157, 203 L. Ed. 2d 504 (2019)

*(continued on next page)*

opined that the plaintiff has mild limitations in the plaintiff's ability to understand, remember, and carry out simple instructions and moderate limitations in the plaintiff's ability to understand, remember, and carry out complex instructions. Correspondingly, in the RFC determination, the ALJ limits the plaintiff "to unskilled work, involving only routine, repetitive tasks that are not performed in a fast-paced production environment." (Tr. 225.) Dr. Levinson opined that the plaintiff has moderate limitations in the plaintiff's ability to make judgments on simple and complex work-related decisions. Correspondingly, in the RFC determination, the ALJ limits the plaintiff to "occasional, simple decision-making." (Tr. 225.) Dr. Levinson opined that the plaintiff has moderate limitations in the plaintiff's ability to respond appropriately to usual work situations and changes in a routine work setting. Correspondingly, in the RFC determination, the ALJ limits the plaintiff to "routine, repetitive tasks that are not performed in a fast-paced production environment" with "occasional changes in work duties or work setting." (Tr. 225.) Dr. Levinson opined that the plaintiff has *marked*

---

(specifically deciding only issues raised by the plaintiff and not all possible issues in the case).

*limitations* in the plaintiff's ability to interact appropriately with coworkers, supervisors, and the public. Correspondingly, in the RFC determination, the ALJ limits the plaintiff to "occasional interaction with supervisors and co-workers, and no more than brief and incidental interaction with the public." (Tr. 226.) Because the ALJ provided accommodations for *each* of the limitations opined by Dr. Levinson, any limitation in weight assigned to Dr. Levinson's opinion by the ALJ has little, if any, effect on the ALJ's RFC determination or decision.

Additionally, the plaintiff argues that the ALJ erred in failing to limit the plaintiff to one- and two-step tasks. The plaintiff alleges that Dr. Rohar opined that the plaintiff should be limited to one- and two-step tasks. (Doc. 19, at 21.) First, Dr. Rohar did not opine that the plaintiff should be limited to one- and two-step tasks. Dr. Rohar stated, "The claimant can understand, retain, and follow simple job instructions (i.e., perform/follow one and two step tasks/instructions)." (Tr. 300.) It is unclear whether Dr. Rohar intended to limit the plaintiff to only one- and two-step tasks. Dr. Rohar, however, intentionally chose the word "simple" as the descriptor of the type of tasks the plaintiff can perform and discussed the number of steps merely as an example. However, as cited

by the plaintiff,[5] "[a]n ALJ should give treating physicians' reports great weight . . . ." *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008). Even if Dr. Rohar intended to limit the plaintiff to one- and two-step tasks, the ALJ in formulating the RFC was entitled to formulate an RFC which corresponded to the opinion of Dr. Levinson, the plaintiff's treating physician, and not to the opinion of Dr. Rohar, which is what the ALJ did (as explained above). Therefore, the ALJ did not err in rejecting Dr. Rohar's profered example of one- and two-step tasks where the ALJ actually limited the plaintiff to simple tasks as supported by both Dr. Levinson and Dr. Rohar. (Tr. 225, 300, 707.)  We find no basis to reverse the ALJ's decision on this assignment of error.

## C. Evaluation of Symptoms and Subjective Statements

As her second alleged error, Rinaldi asserts that the ALJ's RFC determination is not supported by substantial evidence because the ALJ erred in his evaluation of Rinaldi's subjective statements of symptoms. (Doc. 19, at 15, 29).

The Commissioner's regulations explain how an ALJ evaluates a claimant's testimony regarding how symptoms affect the ability to work:

---

[5] Doc. 19, at 15.

> In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, we consider all of the available evidence described in paragraphs (c)(1) through (c)(3) of this section. We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

20 C.F.R. § 404.1529(c)(4).

Standing alone, a claimant's allegation of a symptom is not enough to establish an impairment or disability. 20 C.F.R. § 404.1529(a); *Prokopick v. Comm'r of Soc. Sec.*, 272 Fed. App'x 196, 199 (3d Cir. 2008) ("Under the regulations, an ALJ may not base a finding of disability solely on a claimant's statements about disabling pain"). An ALJ is permitted to reject a claimant's subjective testimony as long as he or she provides sufficient reasons for doing so. *Prokopick*, 272 Fed. App'x at 199 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir.1999),

and Soc. Sec. Ruling 96-7p, 1996 SSR LEXIS 4, 1996 WL 374186).

A claimant's statements alone are not enough to establish a physical or mental impairment. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1528(a). "[T]here must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of medical impairment that results from anatomical, physiological, psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence, would lead to a conclusion that the individual is under a disability." 42 U.S.C. § 423(d)(5)(A). When assessing credibility, the ALJ must find specific reasons supported by the evidence in the record. Soc. Sec. Ruling 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304, at *10. It is the ALJ's responsibility to determine the extent to which a claimant is accurately stating his degree of pain and level of disability. *See Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

When evaluating a claimant's subjective allegations, the ALJ utilizes a two-step process. Soc. Sec. Ruling 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304. First, the ALJ must determine whether there is a medically determinable impairment that can be shown by medically

acceptable clinical and laboratory diagnostic techniques, which could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). An individual will not be found to be "disabled based on alleged symptoms alone." See Soc. Sec. Ruling 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304, at *4 (explaining that "[i]f there is no medically determinable impairment, or if there is a medically determinable impairment, but the impairment(s) could not reasonably be expected to produce the individual's symptoms," those symptoms will not be found to affect the claimant's "ability to perform work-related activities").

Once the ALJ has found that a medically determinable impairment is established, the ALJ then evaluates the claimant's allegations about the intensity, persistence, or functionally limiting effects of her symptoms against the evidence of record. Soc. Sec. Ruling 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304, at *4. This evaluation requires the ALJ to "examine the entire record, including the objective medical evidence," the plaintiff's testimony, and any other relevant evidence. (*Id.*).

An ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness's demeanor and credibility. *Frazier v. Apfel*,

No. 99-CV-715, 2000 WL 288246, at *9 (E.D. Pa. Mar. 7, 2000) (*quoting Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). An ALJ is not free to discount a claimant's statements about his or her symptoms or limitations for no reason or for the wrong reason. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

### D. The ALJ's Analysis of Rinaldi's Statements

Here, Rinaldi argues the ALJ erred in his evaluation of Rinaldi's subjective statements. (Doc. 19, at 15, 29). She states:

> the ALJ conceded that Ms. Rinaldi's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" (Tr. 226). In apparent support of this, the ALJ made another conclusory finding that unspecified "objective" evidence does not support Ms. Rinaldi's allegations regarding the severity of her mental impairments (Tr. 229-230). He also noted that Plaintiff engages in some activities of daily living (Tr. 230) . . . .

> Ms. Rinaldi's ability to perform minimal activities of daily living for short periods of time at sporadic intervals is not contrary to a finding that she is precluded from sustaining full-time work on a sustained basis. As discussed above, the ALJ erred by concluding there is insufficient "objective" evidence to support a finding of mental disability for Ms. Rinaldi when every source to examine her came to a contrary conclusion. The ALJ's reasoning applies with no greater force to Plaintiff's subjective statements than to the medical

opinion evidence. Furthermore, the Commissioner's Regulations on evaluating a claimant's subjective statements, 20 C.F.R. § 404.1529, states that a claimant's allegations cannot be rejected solely "because the available objective medical evidence does not substantiate [the claimant's] statements." See also SSR 16-3p (recognizing a claimant's "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques").

(Doc. 19, at 30-31.)

Despite the plaintiff's allegation that the ALJ relies exclusively upon the plaintiff's activities of daily living as explanation for the ALJ's treatment of the plaintiff's statements about the plaintiff's symptoms, the ALJ provided a thorough summary of the plaintiff's medical treatment history, including notations of the plaintiff's self-reports of good, stable, or improved moods amid other reports by the plaintiff. (Tr. 227-29.) The ALJ clarified that this medical summary was for the purpose of analyzing the plaintiff's subjective statements by concluding the summary:

> Therefore, while the claimant alleges that she has had difficulty sleeping, a loss of appetite, and other symptoms related to her mental health impairments, the medical evidence of record does not substantiate the degree of limitation to which the claimant alleges. Rather, the above objective evidence of record in combination with the claimant's statements below from her Function Report and consultative examination as well as the medical opinions of record support no greater mental health limitations . . . .

(Tr. 229-30.) The ALJ's thorough summary indicates that the ALJ considered the plaintiff's medical record in conjunction with the plaintiff's statements. The ALJ's summary indicates that the ALJ did not rely upon the plaintiff's activities of daily living in rejecting allegations about the severity of the plaintiff's symptoms. Rather, the ALJ indicated that he relied both upon the plaintiff's medical record and upon the medical opinions in formulating the RFC.

The plaintiff further argues that "every source to examine her came to a [] conclusion" that sufficient evidence existed to find the plaintiff disabled. We disagee. The plaintiff's treating physician opined about the plaintiff's functional capacity and did not opine that the plaintiff is disabled. (Tr. 707-09.) Rather, when the ALJ accounted for all functional capacity limitations mentioned by the treating physician, the plaintiff was found not disabled. (*See* section B above; Tr. 235.)

But even if the plaintiff's treating physician had opined that the plaintiff was disabled, such an opinion is never grounds for remand. Rather, whether a claimant is disabled is "an ultimate issue reserved to the Commissioner." *Smith v. Comm'r of Soc. Sec.*, 178 F. App'x 106, 112 (3d Cir. 2006) (citing 20 C.F.R. § 404.1527(e); Social Security Ruling 96–

6p); *see also Boggs v. Colvin*, No. 1:13-CV-00111, 2014 WL 1277882, at *6 (M.D. Pa. Mar. 27, 2014) (quoting *Snow v. Astrue*, Civil Action No. 12–5 Erie, 2013 WL 501377, at *8 (W.D.Pa. Jan.15, 2013)) ("The ultimate determination as to whether a claimant is disabled is reserved to the Commisioner."). "Unlike the medical opinion of a treating physician regarding the nature and severity of an individual's impairments, which may be entitled to controlling weight, no special significance is given to the source of an opinion on the ultimate outcome." *Smith v. Comm'r of Soc. Sec.*, 178 F. App'x 106, 112 (3d Cir. 2006) (citing 20 C.F.R. § 404.1527(e)(3)); *see also Boggs v. Colvin*, No. 1:13-CV-00111, 2014 WL 1277882, at *6 (M.D. Pa. Mar. 27, 2014) (quoting *Dixon v. Comm'r of Soc. Sec.*, 183 Fed. App'x 248, 251 (3d Cir.2006)) ("[O]pinions on disability are not medical opinions and are not given any special significance.").

The ALJ thoroughly reviewed the record and relied upon medical opinions in his evaluation of Rinaldi's subjective statements about symptoms. Therefore, the ALJ correctly applied the relevant law in evaluating Rinaldi's subjective statements.

## III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's

finding that Rinaldi was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.


Dated: September 20, 2022                    ___***s/Joseph F. Saporito, Jr.***___
                                             JOSEPH F. SAPORITO, JR.
                                             United States Magistrate Judge